## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW – NYA<br>Washington, DC  20530 | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| **CITY OF BALTIMORE, MARYLAND,** | )<br>) |
| Serve:<br>      Spencer Nichols<br>      Special Assistant City Solicitor<br>      Baltimore City Fire Department<br>      401 E. Fayette Street<br>      Mezzanine Level<br>      Baltimore, Maryland  21202 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

## COMPLAINT

NOW COMES Plaintiff, United States of America, and respectfully alleges:

1.    This action is brought by the United States against the City of Baltimore, Maryland (hereinafter "Defendant"), to enforce the statutory and regulatory provisions of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, which incorporates, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

2.    This Court has jurisdiction of this action under 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 2000e-6, 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

3.     This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117(a).

4.     Venue is appropriate pursuant to 28 U.S.C. § 1391 because Defendant is located in Maryland and a substantial part of the events or omissions giving rise to the claims occurred in Maryland.

5.     Defendant is a person within the meaning of 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e(a).

6.     Defendant is an employer within the meaning of 42 U.S.C. §§ 12111(5) and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2.

7.     The complainant is a person with a disability because she has physical or mental impairments that substantially limit one or more major life activities, including the operation of major bodily functions (namely, depression, bipolar disorder, and hypersomnolence); because she has a record of such impairments; and/or because she was regarded as having such impairments.  42 U.S.C. § 12102.

8.     For over six years, from 2001 through 2008, the complainant worked successfully as a Dispatcher at the City of Baltimore Sheriff's Department.

9.     In June 2008, the complainant applied for a position as a Fire Dispatcher with Defendant's Fire Department in response to a vacancy announcement.

10.    As part of the application process, the complainant was notified by Defendant that she passed the interview and required screening tests for the position, which included a typing test, a radio communications/dispatch test, and an audio test.

11.    Among the 15 applicants for the position who were selected to take the required screening tests, the complainant received the highest score on the typing test and was one of the top candidates with the highest combined scores on all tests.

12.   In December 2008, the complainant received a letter from Defendant addressing her as an "Applicant" and advising that "with consideration for possible appointment with the Baltimore City Fire Department, you are directed to report for a pre-employment physical examination and drug screening on Friday December 12, 2008 at 1340 hours at the following location:  Mercy Medical Center, Public Safety Infirmary, 323 N. Calvert Street, Baltimore, MD 20202." The letter also stated, "Please be advised that information revealed during the criminal background investigation and other sources as applicable, but not disclosed during the application or interview process will result in your separation from employment if selected."

13.   The above-referenced letter did not constitute a conditional job offer for a Fire Dispatcher position with the Fire Department.

14.   The above-referenced letter is a standard form letter sent to applicants who are being considered for employment with the Fire Department.

15.   Mercy Medical Center's Public Safety Infirmary ("PSI") is the contracted medical examiner for the City of Baltimore, including its Fire and Police Departments.

16.   Several other applicants for Fire Dispatcher positions were also directed by Defendant, via the above-referenced form letter, to report to the PSI for a pre-employment medical examination in consideration for hire to Fire Dispatcher positions.

17.   Several other applicants for Fire Dispatcher positions underwent pre-employment medical examinations at the PSI after receiving the above-referenced form letter.

18.   Several applicants for other vacancies with the Fire Department were directed by Defendant, via the above-referenced form letter, to report for medical examinations at the PSI in consideration for hire.

19.   Several other applicants for other vacancies with the Fire Department underwent pre-employment medical examinations at the PSI after receiving the above-referenced form letter.

20.   Following the Defendant's instructions, on December 12, 2008, the complainant underwent a medical examination at the PSI.

21.   According to the medical record from that examination, the physician who conducted the medical examination of the complainant was Dr. Keith Lee.

22.   Dr. Lee is a physician who specializes in occupational medicine.

23.   During the examination, Dr. Lee asked the complainant disability-related questions, including questions related to a prior shoulder injury.

24.   The results of the medical examination were reviewed, with the final recommendation made, by the Director of the PSI, Dr. James Levy.

25.   Dr. Levy is a physician who specializes in occupational medicine.

26.   Dr. Levy reviewed the complainant's records from other medical providers over various years, dating as far back as 2002.

27.   The PSI had obtained the complainant's prior medical records in connection with an earlier medical examination the complainant underwent at the PSI in October 2008, after she applied for a Dispatcher position with the City of Baltimore Police Department.

28.   During the medical examination the complainant underwent at the PSI in October 2008, the PSI had the complainant sign a release allowing the PSI to obtain her medical records from other health care providers.

29.   According to Dr. Levy, when the PSI seeks medical records, obtaining two years of complete medical records is considered "routine."

30.   Included in the complainant's medical records was a letter from her then-treating physician specialist stating that, "There are no limitations for physical or other activities that may be required for employment."

4

31.   After reviewing the complainant's medical records, Dr. Levy advised Defendant that the complainant was unfit for employment as a Fire Dispatcher with Defendant without ever having met or examined the complainant.

32.   On the "Request for Services" form, which is filled out by a PSI physician after an applicant's medical examination and subsequently given to the referring Defendant employer, Dr. Levy wrote as follows under a section entitled "health related condition(s) exists which may interfere with performance of essential job functions": the complainant "has chronic, long standing [sic] medical disorders that require she work in a low stress environment and precludes shift work. As a result she is not able to safely and reliably perform all of duties [sic] of a dispatcher in a regular and reliable manner."

33.   As a result of Dr. Levy's determination, Defendant decided not to hire the complainant for a Fire Dispatcher position with Defendant.

34.   In January 2009, the complainant contacted the Human Resources Department to check on the status of her application and was informed by a personnel assistant that she was rejected due to a "longstanding medical condition."

35.   In February 2009, five other applicants were appointed by Defendant to Fire Dispatcher positions, which were the same vacancies for which the complainant was rejected by Defendant.

36.   As a result of not being hired by Defendant, the complainant experienced emotional distress.

37.   On February 12, 2009, the complainant filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant discriminated against her in violation of the ADA by refusing to hire her for a Fire Dispatcher position.

38.   Pursuant to 42 U.S.C. § 2000e-5, incorporated by reference in 42 U.S.C. § 12117(a), the EEOC investigated the complainant's charge and found reasonable cause to believe that Defendant discriminated against her in violation of the ADA.   After attempting unsuccessfully to

reach a voluntary resolution of the charge, the EEOC referred the matter to the United States Department of Justice.

**Statement of Claims**
**Count I – Title I of the Americans with Disabilities Act (Individual Claims)**

39.    The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

40.    Defendant's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, *et seq.*, and its implementing regulation, 29 C.F.R. Part 1630, in the following ways:

   (a)    by requiring the complainant to submit to an unlawful medical examination and to answer disability-related inquiries prior to making a conditional offer of employment for a Fire Dispatcher position, Defendant's conduct constitutes a violation of Title I of the ADA.  *See* 42 U.S.C. § 12112(d); 29 C.F.R. § 1630.13(a);

   (b)    by excluding the complainant, who was an otherwise qualified applicant for the Fire Dispatcher job vacancies, because she has an impairment that substantially limits one or more major life activities, has a record of such an impairment, and/or was regarded as having impairments that are neither transitory nor minor, Defendant's conduct constitutes discrimination in violation of Title I of the ADA. *See* 42 U.S.C. §§ 12102, 12112(a), (b), (d); 29 C.F.R. § 1630.2; 29 C.F.R. § 1630.4; and

   (c)    by using qualification standards and/or or other selection criteria that are not

6

consistent with business necessity and that screened out the complainant from

being hired for a Fire Dispatcher job vacancy, Defendant's conduct constitutes

discrimination in violation of Title I of the ADA. *See* 42 U.S.C. § 12112(a), (b);

29 C.F.R. § 1630.10.

## Count II – Title I of the Americans with Disabilities Act (Pattern or Practice Claim)

41.    The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein

by reference.

42.    Defendant's conduct as described in this Complaint constitutes a pattern or practice of

discrimination on the basis of disability by requiring job applicants for Fire Dispatcher positions,

and other vacancies with the Fire Department, to submit to unlawful medical examinations and

disability-related inquiries prior to making conditional offers of employment. *See* 42 U.S.C. §

12112(d) and 12117(a), which incorporates by reference Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e-6; 29 C.F.R. § 1630.13(a). Unless restrained by order of

this Court, Defendant will continue to pursue policies and practices that are the same as or

similar to those alleged in this Complaint.

## Prayer for Relief

WHEREFORE, the United States prays that this Court:

(a)    Grant judgment in favor of the United States and declare that Defendant has

violated Title I of the ADA, 42 U.S.C. §§ 12111 *et seq.*, and its accompanying regulation;

(b)    enjoin Defendant and its agents, employees, successors and all persons in active

concert or participation with it, from engaging in discriminatory employment policies and

practices that violate Title I of the ADA;

7

(c)     require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA and its accompanying regulations;

(d)     order Defendant to train its supervisors and human resource staff regarding the requirements of the ADA;

(e)     enjoin Defendant from failing or refusing to take other appropriate nondiscriminatory measures to overcome the effects of its discriminatory policies and practices;

(f)     award the complainant, and other affected individuals, where applicable:

      (i)     an offer of instatement to the next vacant position with Defendant comparable to the position to which they applied;

      (ii)     back pay with interest;

      (iii)     retroactive seniority dates with all associated rights and benefits;

      (iv)     back pension benefits with interest;

      (v)     compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's failure to comply with the requirements of Title I of the ADA pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

(g)     order such other appropriate relief as the interests of justice require.

**Jury Demand**

Plaintiff United States requests a trial by jury as to all counts.

FOR THE UNITED STATES OF AMERICA

ERIC H. HOLDER, JR.
Attorney General of the United States

ROD J. ROSENSTEIN
United States Attorney
District of Maryland

ALLEN LOUCKS (Bar No. 03094)
Assistant United States Attorney
District of Maryland
36 South Charles St., Fourth Floor
Baltimore, MD 21201
Telephone: (410) 209-4800
Facsimile:  (410) 962-9947
allen.loucks@usdoj.gov

MOLLY J. MORAN
Acting Assistant Attorney General
Civil Rights Division

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND, Chief
SHEILA FORAN, Special Legal
Counsel
AMANDA MAISELS
Acting Deputy Chief
Disability Rights Section
Acting Deputy Chief
Disability Rights Section
Civil Rights Division

/s/ Elaine Grant
ELAINE GRANT
Senior Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW-NYA
Washington, D.C. 20530
Telephone: (202) 305-8686
Facsimile:  (202) 305-9775
elaine.grant@usdoj.gov